OPINION
PER CURIAM.
Petitioner Ramon Virgilio Lopez Perez, a native and citizen of the Dominican Republic, petitions for review of the Board of Immigration Appeals’ (“BIA”) final order of removal. For the following reasons, we will deny the petition for review.
I.
Lopez Perez entered the United States without inspection in the 1980s and at some point obtained lawful temporary permanent resident status. In 1990, he was convicted under New York law of second degree criminal sale of cocaine, for which he was sentenced to six-years-to-life in prison. In 2006, he was convicted of third degree attempted criminal sale of cocaine and was sentenced to two years in prison. He pleaded guilty to the 2006 charge and asserts that in exchange for a lenient sentence recommendation and for “protection,” he provided the prosecutor with information about the drug dealing organization with which he was involved. Lopez Perez believes that because of the information he provided to the government, the leader of the drug organization *749 returned to the Dominican Republic to avoid arrest.
Upon completion of his criminal sentence, Lopez Perez was taken into custody by immigration officials. An Immigration Judge (“IJ”) found Lopez Perez to be removable as a drug trafficker and for violating a state law relating to a controlled substance. See 8 U.S.C. § 1182(a)(2)(A)(i)(II) and (C). The IJ then determined that he was ineligible for cancellation of removal, adjustment of status, asylum, withholding of removal, and that he did not qualify for relief under the United Nations Convention Against Torture (“CAT”). On November 26, 2007, the BIA sustained in part Lopez Perez’s appeal, finding that the IJ erred in denying the CAT claim because Lopez Perez did not have an opportunity to formally apply for such relief.
On remand, the IJ conducted a hearing regarding Lopez Perez’s CAT claim, which was based on his fear that he would be harmed in the Dominican Republic because he had cooperated with New York authorities by providing information about the drug dealers for whom he worked.[1] He testified that in 2007 his mother (who lived in New York) received a telephone call from a man who stated that if Lopez Perez returned to the Dominican Republic, his body would be sent back in pieces. Lopez Perez also asserted that he would be imprisoned upon his return to the Dominican Republic, and that the wealthy and powerful head of the drug organization would bribe the police to torture and kill him — or that the police would allow him to be tortured and killed. Lopez Perez was, however, unaware of any connection between the drug dealer and the Dominican Republic authorities. The United States State Department Country Reports for the Dominican Republic submitted by Lopez Perez and the government supported Lopez Perez’s allegations of corruption but did not note any particular connection between the government and the drug trade.
The IJ presumed Lopez Perez to be credible but denied his claim because he did not establish that it was more likely than not that he would be tortured in the Dominican Republic. 8 C.F.R. § 208.16(c)(2). The IJ explained that while “bribery and corruption are rampant in the Dominican Republic,” the “record is void of any credible evidence suggesting” that the Dominican Republic government would bear responsibility for any harm suffered by Lopez Perez for cooperating with New York authorities.
On appeal to the BIA, Lopez Perez asserted for the first time that harsh prison conditions in the Dominican Republic constituted torture under the CAT. The BIA rejected this claim, noting that the record did not establish that Lopez Perez would be imprisoned in the Dominican Republic and that, in any case, poor prison conditions do not amount to torture as defined by the CAT. See Pierre v. Att’y Gen., 528 F.3d 180, 189 (3d Cir.2008). The BIA further agreed that Lopez Perez did not establish that it was “more likely than not that he would be tortured at the instigation or with the acquiescence of a public official.”
Lopez Perez now petitions for review of the BIA’s final order of removal.
II.
We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. *750 § 1252(a)(1). Where, as here, the BIA agrees with the decision and analysis of the IJ while adding its own reasoning, we review both decisions. See Sandie v. Att’y Gen., 562 F.3d 246, 250 (3d Cir.2009).
The government correctly asserts that because Lopez Perez was found removable under 8 U.S.C. § 1182(a)(2), our jurisdiction extends only to the review of “constitutional claims or questions of law raised upon a petition for review.” 8 U.S.C. § 1252(a)(2)(D). Although this limitation strips us of authority to review the BIA’s factual or discretionary determinations, our jurisdiction to consider “questions of law” encompasses the “application of law to undisputed fact.” Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir.2006).
For relief under the CAT, Lopez Perez had to demonstrate that it is more likely than not that he would be tortured if removed to the Dominican Republic. 8 C.F.R. § 208.16(c)(2). The torturous acts must be inflicted “by or at the instigation of or with the consent of a public official or other person acting in an official capacity.” 8 C.F.R. § 1208.18(a)(1).
In his petition for review, Lopez Perez presents overlapping claims in which he asserts that the IJ abused his discretion by concluding that he did not meet the standard for CAT relief.[2] In particular, he argues that the IJ erred by determining that the Dominican Republic government did not have the specific intent to kill or torture him due to his cooperation with the New York authorities. This argument is based on his assertion that the leader of the drug organization for whom he worked, and on whom he informed, was aligned with the government. While the IJ acknowledged the corruption in the Dominican Republic, along with the possibility that the drug organization may seek to harm Lopez Perez for his cooperation with the government, it found that the record contained no evidence tying the organization to the government, or that it would act with the government’s acquiescence. See Silva-Rengifo v. Att’y Gen., 473 F.3d 58, 70 (3d Cir.2007) (“For purposes of CAT claims, acquiescence to torture requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it.”). As noted above, we lack jurisdiction over any challenge to the factual findings of the IJ. 8 U.S.C. § 1252(a)(2)(C) & (D). Thus, based on the finding that the drug organization and the government were not aligned or that the record contained no evidence that the government would acquiesce in any torture, the BIA and IJ properly determined that any harm that the group inflicted upon Lopez Perez would not constitute torture as defined by the CAT.[3]
For the above reasons, we will deny the petition for review.

. While the case was on remand, Lopez Perez sought a continuance and change of venue. The IJ denied his request and his subsequent motion for reconsideration. On May 19, 2008, the BIA declined to review the decision because Lopez Perez did not meet the criteria for interlocutory review.

. To the extent that Lopez Perez seeks review of the denial of his applications for asylum and withholding of removal, the IJ and BIA correctly determined that he is statutorily ineligible for such relief due to his drug trafficking conviction. See 8 U.S.C. § 1101(a)(43)(B); 8 U.S.C. § 1231(b)(3).

. We have reviewed Lopez Perez's remaining claims and find them to be meritless.